# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-1272
_____

United States of America

*Plaintiff - Appellee*

v.

Nohel Reyna Rodriguez

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: December 9, 2019
Filed: April 15, 2020
[Unpublished]

_____

Before SMITH, Chief Judge, LOKEN and GRASZ, Circuit Judges.

_____

PER CURIAM.

Nohel Reyna Rodriguez ("Reyna") pleaded guilty to conspiracy to distribute over 500 grams of methamphetamine mixture and 50 grams of actual methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846. At

sentencing, over Reyna's timely objections, the district court[1] determined that his base offense level was 36 based on its drug quantity finding, imposed a two-level aggravating role enhancement, and found that Reyna did not qualify for a safety valve reduction or a downward adjustment for acceptance of responsibility. This resulted in an advisory guidelines sentencing range of 235 to 293 months imprisonment. Reyna appeals his 235-month sentence, challenging the drug quantity, aggravating role, safety valve, and acceptance of responsibility rulings. Reviewing for clear error, we affirm.

## I. The Drug Quantity Issue

Reyna's Presentence Investigation Report ("PSR"), in ten factually detailed paragraphs, concluded that his offense involved 19,305.2 grams of methamphetamine mixture, producing a base offense level of 36 (at least 15 but less than 45 kilograms of methamphetamine). See USSG § 2D1.1(a)(5), (c)(2). The PSR attributed specific quantities of methamphetamine mixture to distinct transactions: (i) ten pounds (4,536 grams) a confidential informant ("CI") received from Reyna in the first half of 2017 for distribution; (ii) 193 grams from controlled buys and drug payments by the CI in June 2017; (iii) ten pounds Reyna sold to customer Jack Carr, disclosed to officers by co-conspirator Mark Aguirre after Aguirre was arrested fleeing an attempted traffic stop on June 28; (iv) 61 grams co-conspirator Kevin Nunez delivered on July 24 after the CI arranged the purchase in a recorded call to Reyna; and (v) twenty-two pounds (9,979.2 grams) found in a Nissan Altima registered to Reyna on August 10 after Nunez, arrested carrying a Mexican identification card for Reyna, said he worked for Reyna and led officers to the Altima which he said contained a recent shipment. In addition, the PSR stated that Reyna was a passenger in Aguirre's vehicle on June 28 and escaped on foot when the fleeing vehicle was finally stopped.

---

[1]The Honorable Stephanie M. Rose, United States District Judge for the Southern District of Iowa.

A warrant search of Reyna's residence after Aguirre's arrest yielded $18,932 in a safe, and $2,000 of the CI's buy money in Reyna's wife's purse.

Reyna objected to the PSR's drug quantity calculations, arguing that only 500 grams of methamphetamine should be attributable to him because the PSR did not describe activities that were reasonably foreseeable to Reyna. At the sentencing hearing, the government presented testimony from two witnesses. Drug Enforcement Administration ("DEA") Special Agent Thomas Smith described the DEA's lengthy investigation and surveillance of Reyna, corroborating the quantity-related paragraphs in the PSR. He also described a proffer interview in which Reyna denied directing Nunez to distribute methamphetamine. Nunez, now a cooperating defendant, testified that he worked for Reyna, acting as his translator during drug sales, delivering pounds of methamphetamine to Reyna's customers, and collecting drug debts on behalf of Reyna. The defense called no witnesses. The district court found both Smith and Nunez credible and found that Smith's testimony was corroborated by the search of Reyna's residence, recorded phone calls, controlled purchases, the use of two vehicles registered to Reyna, GPS tracker results, the seizure of twenty-two pounds of methamphetamine from Reyna's car, and phone records linking Reyna to identified co-conspirators. Based on this evidence and Reyna's admissions to some conduct described in the PSR, the court found that at least 15 kilograms of methamphetamine were attributable to Reyna. We review this drug quantity finding for clear error. United States v. Yellow Horse, 774 F.3d 493, 496 (8th Cir. 2014).

On appeal, Reyna argues the district court clearly erred because the government only proved that 500 grams of methamphetamine can be attributed to him, resulting in a base offense level of 30. See USSG § 2D1.1(a)(5), (c)(8). The government bears the burden of proving drug quantity by a preponderance of the evidence. "[T]he court may make a specific numeric determination of quantity based on imprecise evidence so long as the record reflects a basis for the court's decision." Yellow Horse, 774 F.3d at 497 (quotation omitted). In sentencing for a drug conspiracy

offense, the court "may consider all transactions known or reasonably foreseeable to the defendant that were made in furtherance of the conspiracy." United States v. Whirlwind Soldier, 499 F.3d 862, 872 (8th Cir. 2007), cert. denied, 552 U.S. 1209 (2008) (quotation omitted).

Reyna argues the district court clearly erred because its drug quantity finding was based on hearsay statements of co-conspirators who did not testify at the sentencing hearing and unreliable testimony from Nunez. It is well-settled that a district court "may rely on hearsay evidence for sentencing purposes, as long as it has sufficient indicia of reliability to support its probable accuracy." United States v. Moralez, 808 F.3d 362, 368 (8th Cir. 2015) (quotations omitted). Drug quantity determinations may be based on the testimony of a co-conspirator alone. United States v. Walker, 688 F.3d 416, 421 (8th Cir. 2012), cert. denied, 568 U.S. 1074 (2012). Here, the district court found both Special Agent Smith and Nunez credible, a finding nearly unreviewable on appeal. See United States v. Mannings, 850 F.3d 404, 409 (8th Cir. 2017). Although Smith's testimony included hearsay from co-conspirators and investigating officers, the district court found it was corroborated by Nunez and other evidence including recorded calls, phone records, controlled purchases, vehicles registered to Reyna, and the seizure of methamphetamine and cash from Reyna's residence and vehicle. The district court did not clearly err in finding, for base offense level purposes, that Reyna's offense involved more than 15 kilograms of methamphetamine mixture based on detailed fact recitals in the PSR, to which there were few specific objections, and the corroborated testimony of two witnesses the court expressly found credible.

## III. Remaining Guidelines Issues

Reyna challenges district court rulings that imposed a two-level aggravating role enhancement, denied safety valve relief, and declined to give Reyna an adjustment for acceptance of responsibility. These are fact findings we review for

clear error. See Moralez, 808 F.3d at 367 (aggravating role); United States v. Soto, 448 F.3d 993, 995 (8th Cir. 2006) (safety valve proffer); United States v. Greger, 339 F.3d 666, 672 (8th Cir. 2003) (acceptance of responsibility).

**A. Aggravating Role.** The district court imposed a two-level enhancement for Reyna's role as "an organizer, leader, manager, or supervisor" of a criminal conspiracy. See USSG § 3B1.1(c). These terms are interpreted broadly. See United States v. Molina-Perez, 595 F.3d 854, 862 (8th Cir. 2010). The enhancement is appropriate even if the defendant only supervised or managed one other participant in the conspiracy. United States v. Gamboa, 701 F.3d 265, 267 (8th Cir. 2012).

Reyna argues the evidence fails to show that he exercised control and authority over others; at most, the evidence shows that he was a contact person. Paragraph 8 of the PSR stated Nunez collected a $3,950 drug debt from the CI "on behalf of Reyna Rodriguez." The district court correctly noted that "paragraph 8 of the presentence report all by itself would support an aggravating role adjustment here." Additionally, paragraph 14 of the PSR stated that on another day, Reyna sent Nunez to deliver 61 grams of methamphetamine to the CI, driving a vehicle registered to Reyna. Beyond these paragraphs of the PSR, to which Reyna did not object, Special Agent Smith and Nunez testified that Reyna directed Nunez to deliver drugs and collect money, testimony corroborated by surveillance and other evidence. The district court did not clearly err in assessing an aggravating role enhancement.

**B. Safety Valve.** Reyna had the burden to prove by a preponderance of the evidence that he met the five requirements enumerated in 18 U.S.C. § 3553(f) and USSG § 5C1.2(a) to qualify for a safety valve sentencing reduction. Soto, 448 F.3d at 995. The district court first ruled that Reyna was ineligible for safety valve relief because he played an aggravating role in the conspiracy. See § 3553(f)(4). As we have upheld the aggravating role enhancement, the denial of safety valve relief must likewise be upheld. In addition, the district court found, based on Special Agent

-5-

Smith's credible testimony, that Reyna did not qualify for safety valve relief because he was not fully truthful during his safety valve proffer interview. See § 3553(f)(5). Smith testified that Reyna falsely denied directing Nunez or anyone else to deliver methamphetamine, said he only sold Jack Carr an ounce or two of methamphetamine, and lied about the source of the cash found in his safe, how his wife came to have serialized buy money in her purse, and the quantities of methamphetamine he sold. This finding was not clearly erroneous. Reyna was properly denied a safety valve reduction.

**C. Acceptance of Responsibility.** The PSR recommended that Reyna receive a three-level reduction for acceptance of responsibility because he "assisted authorities in the investigation or prosecution of [his] misconduct by timely notifying authorities of the intention to enter a guilty plea." See USSG § 3E1.1. However, after summarizing the evidence at the end of the sentencing hearing, the district court denied the reduction, explaining:

> This is a defendant flat-out denying things that are, in my view, quite obviously true, obviously well-corroborated, and in my view, that is frivolously contesting and falsely denying the offense conduct and the relevant conduct here.
>
> Acceptance of responsibility is the defendant's burden he has to carry forward showing that he is entitled to it, and I find here that he has not met his burden by a preponderance of the evidence.

"A defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility, but the fact that a defendant's challenge is unsuccessful does not necessarily establish that it was either a false denial or frivolous." USSG § 3E1.1, comment. (n.1(A)). Here, the district court expressly found that Reyna's contesting

-6-

of the drug quantity attributable to him was frivolous, involving false denials of conduct clearly established by the evidence.

On appeal, Reyna argues that he merely questioned the credibility of witnesses and subjected their testimony to cross-examination, which is not a frivolous endeavor. However, Reyna did not deny the factual recitals in the PSR's drug quantity paragraphs. Rather, he asserted the transactions were not reasonably foreseeable to him, in the face of substantial, corroborated, and undisputed testimony to the contrary. Indeed, when asked by the district court to identify the *foreseeable* transactions on which Reyna was basing his contention for a 500 gram finding, defense counsel had no answer. It is not clear error for a district court to deny a reduction for acceptance of responsibility when the defendant denies large amounts of relevant conduct that the district court finds to be well-proven. See, e.g., United States v. Jones, 539 F.3d 895, 898 (8th Cir. 2008). To receive the reduction, "the defendant must accept responsibility for *all* of the conduct that is part of his conviction." United States v. Erhart, 415 F.3d 965, 971 (8th Cir. 2005), abrogated on other grounds, United States v. White, 863 F.3d 784 (8th Cir. 2017) (en banc). "Because the sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility, the determination of the sentencing judge is entitled to great deference on review." United States v. Davis, 875 F.3d 869, 875 (8th Cir. 2017), cert. denied, 138 S. Ct. 2585 (2018) (cleaned up). The district court did not clearly err in denying Reyna an acceptance of responsibility reduction.

The judgment of the district court is affirmed.

_____